IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

**FILED**
ASHEVILLE, N. C.

APR 2 1 1999

U.S. DISTRICT COURT
W. DIST. OF N. C.

CIVIL NO. 1:98CV173

| | |
|---|---|
| CHARLES H. STEWART, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| U.S. CORRECTIONS CORPORATION, | ) |
| and CORRECTIONS CORPORATION | ) |
| OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**THIS MATTER** is before the Court on the Defendants' timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the Defendants' motion for summary judgment to the Magistrate Judge for a recommendation as to disposition. The Plaintiff has not filed objections to that portion of the recommendation which would dismiss the claims under the Fair Labor Standards Act and the Wage and Hour Act. The Defendants have objected to the recommendation that the claims for breach of contract and tortious interference with contract be retained for trial. The Court therefore conducts a *de novo* review of that portion of the recommendation to which the Defendants' have filed objections. **28 U.S.C. § 636(b).**

The facts are essentially undisputed. Prior to July 1997 the Plaintiff, who was the warden of a prison in Connecticut, had been an employee of the Federal Bureau of Prisons for over 23 years. On July 23, 1997, he received a written offer of employment from United States Corrections Corporation (USCC), the predecessor corporation of Corrections Corporation of America (CCA).

34

As a result, he accepted the position of warden of the Pamlico County medium security correctional facility operated on behalf of the State of North Carolina. The letter sent to the Plaintiff confirmed certain terms of employment, including a starting date, an annual salary of $70,000 plus benefits "and a 10% bonus annually upon successful completion of first and second years of employment." Plaintiff was also allowed to participate in a stock option plan, was provided with the use of an institutional vehicle and would be provided moving expenses "as approved by the Vice President of Business Administration." Plaintiff testified at his deposition that in addition to the terms set forth in the letter, he attempted to negotiate for the cost of temporary housing and furniture. **Exhibit 1, Deposition of Charles H. Stewart, Jr.,** *attached to* **Defendants' Motion for Summary Judgment, at 29.** He never signed a contract with USCC. *Id.*, **at 41.** No one ever promised him he would have a job for a definite period of time. *Id.*, **at 43 ("When I hired on, I hired with the notion that I would be with them . . . at least till I'm 62 . . . . Did anyone promise you that you would have a job through the time you were 62 years old? . . . No.").** In addition, Plaintiff never made it a condition of employment that he be employed for two years. *Id.*, **at 45.** And, neither in negotiations nor written correspondence did the Defendants state Plaintiff would be employed until age 62. *Id.*

Plaintiff moved to Pamlico County, but in March 1998 he was transferred by the corporation to the Avery/Mitchell County facility. In a memorandum to the Plaintiff, the corporation's director of human resources notified the Plaintiff that he would be compensated for the cost of a riding lawn mower which was to become the property of the correctional facility, certain costs in connection with selling his existing home in Pamlico County, and reasonable moving expenses. Other items for which the Plaintiff requested reimbursement were not approved. The corporation did agree that it would assume the mortgage payments for the Pamlico County home pending its sale, but specified that any offers for $130,000 or above should be sent to the corporate headquarters immediately.

Plaintiff's move was accomplished in April 1998 but in June 1998, USSC was acquired by CCA. As part of that merger, the Plaintiff was terminated. Plaintiff claims the July 23, 1997, letter constitutes an employment contract which was breached when he was terminated prior to the expiration of two years. He also claims the March 20, 1998, memorandum constitutes a separate contract which was breached when the Defendants failed to pay his mortgage.

North Carolina "has long adhered to the employment-at-will doctrine; *i.e.*, '[w]here a contract of employment does not fix a definite term, it is terminable at the will of either party, with or without cause.'" *Evans v. Cowan*, ___ N.C. App. ___, ___, 510 S.E.2d 170, 174 (1999); *Ridenhour v. Int'l Bus. Mach. Corp.*, ___ S.E.2d ___, 1999 WL 136888 (N.C. App. Mar. 16, 1999). These recent cases reiterate North Carolina's adherance to the employee-at-will doctrine and the necessity for a "definite term of employment." *Id.*

Despite the Plaintiff's protestations to the contrary, this case is almost factually identical to *Wilkerson v. Carriage Park Dev. Corp.*, ___ N.C. App. ___, 503 S.E.2d 138 (1998). Wilkerson was hired by the defendant to act as project manager for a development complex which would encompass 500 homes. Wilkerson asked that his compensation package be reduced to writing resulting in a letter sent by facsimile to outline his compensation. Wilkerson claimed he was hired for a "definite term" because the project would last until all 500 homes were built and he was entitled to a bonus for every home completed. The North Carolina Court of Appeals stated:

> We disagree that such an agreement is sufficient to establish a definite term of employment. North Carolina law has consistently held that to remove an employer-employee relationship from the employment at will doctrine, the contract must specify a definite term of employment. Even where an employment contract specifies compensation at a yearly, monthly, weekly, or daily rate, this Court has held that if the term of service is not specified, the contract is for an indefinite period. In this case, there was no agreement that Wilkerson would work for Carriage Park for a definite term, nor was there an agreement that Wilkerson would work until the 500 houses were completed. Wilkerson admitted in his deposition that he was not

promised employment for a set period of time. His argument that the duration could be implied from the time necessary to construct the 500 homes is unpersuasive, as it does not address the dispositive question of whether the parties agreed he would work for a definite term. In *Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 139 S.E.2d 249 (1964), our Supreme Court considered an employment contract that set forth both a salary and a separate bonus provision. The bonus provision provided that the employee would receive 10% of the net profits after remaining for a certain period, or if he was discharged. The presence of the bonus provision did not alter the Court's view that the contract was for an indefinite period. In the present case, the bonus was not linked to the term of employment. Instead, the bonus was to be paid upon completion of a job within certain standards of quality and timeliness. . . . [W]e disagree that the bonus provisions convert the contract into one for a definite period.

*Id.*, at 140. Likewise, here Plaintiff was hired to supervise the construction of the Pamlico County facility. However, his yearly rate of compensation was not tied to his employment for a certain period of time. And, there was no agreement he would remain employed until the facility was constructed. Nor does the bonus provision convert this into a "definite term." At the end of his first year of employment, he was eligible for a 10% bonus *provided his job was considered to have been successfully performed.* At the end of his second year of employment, a bonus might be paid under the same circumstances. This Court simply cannot find an offer of employment which sets forth the annual salary and an annual bonus is converted into a contract for a definite term simply because the bonus will be paid only for the first two years of employment. *Id.* (citing *Tuttle, supra* (contract for an indefinite term where the employee would receive a 10% bonus after remaining for a certain period of time.)). The disposition of this claim of necessity eliminates the claim for tortious interference with contract.

Plaintiff frankly admits that his subsequent move from Pamlico County to Avery/Mitchell County does not constitute additional consideration and does not convert this into a contract for a definite term. *See, Kurtzman v. Applied Analytical Indus., Inc.,* 347 N.C. 329, 334 (1997) (change of residence exception to the employment-at-will doctrine disapproved and "employer's

**assurances of continued employment [held not to] remove an employment relationship from the at-will presumption.").** Plaintiff does, however, contend this constituted a separate contract for the provision of additional forms of compensation in conjunction with the move. Since all other claims have been dismissed and this cause clearly would not meet the jurisdictional threshold amount, the Court declines to exercise supplemental jurisdiction. **28 U.S.C. § 1367(c)(3).** Thus, this aspect of the breach of contract claim is dismissed without prejudice.

**IT IS, THEREFORE, ORDERED** that the Defendants' motion for summary judgment is hereby **GRANTED** as to every cause of action asserted in the amended complaint with the exception of the breach of contract claim involving the March 20, 1998, memorandum; and

**IT IS FURTHER ORDERED** that the remaining claim is hereby **DISMISSED** without prejudice.

**THIS** the _____ day of April, 1999.

LACY H. THORNBURG
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
for the
Western District of North Carolina
April 21, 1999


* * MAILING CERTIFICATE OF CLERK * *


Re:  1:98-cv-00173


True and correct copies of the attached were mailed by the clerk to the
following:

        David E. Matney III, Esq.
        Matney & Associates, P.A.
        P.O. Box 7053
        22 So. Pack Square
        Suite 402
        Asheville, NC  28802

        John J. McLaughlin III, Esq.
        GOLDBERG & SIMPSON, P.S.C.
        3000 National City Tower
        Louisville, KY  40202

        Keith M. Weddington, Esq.
        Parker, Poe, Adams & Bernstein
        2500 Charlotte Plaza
        201 South College St.
        Charlotte, NC  28244


cc:
Judge                      (✓)
Magistrate Judge           (✓)
U.S. Marshal               ( )
Probation                  ( )
U.S. Attorney              ( )
Atty. for Deft.            ( )
Defendant                  ( )
Warden                     ( )
Bureau of Prisons          ( )
Court Reporter             ( )
Courtroom Deputy           ( )
Orig-Security              ( )
Bankruptcy Clerk's Ofc.    ( )
Other _Lawyers Weekly_     (✓)

Date: _4/21/99_

                                    Frank G. Johns, Clerk

                                    By: _E. Barton, Deputy_